1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROAD SCIENCE, LLC, a Delaware
     limited liability company,

12
                     Plaintiff,              No. CIV S-10-0786 KJM GGH
13
            vs.
14
     TELFER OIL COMPANY, d/b/a
15   WINDSOR FUEL COMPANY et al.,
                                             CLAIM CONSTRUCTION ORDER
16          Defendants.
     _____/

17

18          On December 6, 2011, the court conducted a hearing in accordance with

19   *Markman v. Westview Instruments*, 517 U.S. 370 (1996).  John Heil III, Robert Fitz-Patrick, and

20   James Mayo appeared for the plaintiff, and Robert Kramer, David Makman, and Andrea Miller

21   appeared for the defendants.  Through this order, the court construes the disputed words and

22   phrases found in claim 1 of the patent-in-suit.

23   I.     FACTUAL AND PROCEDURAL BACKGROUND

24          Plaintiff Road Science, LLC (Road Science) sued defendants Telfer Oil

25   Company, d/b/a Windsor Fuel Company, Telfer Tank Lines, Inc., Telfer Enterprises, Inc., and

26   Asphalt Service Company (collectively defendants or Telfer) for alleged infringement of claims

                                               1

1    1–6 of Road Science's patent, United States Patent No. 5,069,578 ('578 patent).  (*See* ECF 20

2    (Plaintiff's First Amended Complaint (FAC)), 47.)

3              The plaintiff's patent involves technology related to asphalt paving and treatment.

4    (ECF 53 at 2; *see also* '578 patent background.)   Specifically, the '578 patent claims a process

5    and machine for producing a road surface coating.  (*Id.*)  The abstract to the '578 patent describes

6    the claimed method and device as follows:

7              The method comprises spreading a layer of bituminous binding
             material on the surface, spreading at least one layer of aggregates
8              on the layer of binding material, and compacting the layer of
             aggregates in contact with the layer of binding material.  The
9              aggregates consist of loose chips covered with a mixture, which
             has a pasty consistency, of bitumen and of pulverulent material.
10             The layer of binding material contains at least 11% of the total
             quality of bitumen used in the coating.  The operations of
11             spreading the binding material and the aggregates and of
             compacting and surfacing the coating are performed in succession
12             within a period of less than 5 seconds, the speed of advance of the
             site being at least ten meters per minute.  An integrated mobile
13             device carrying a bitumen-spraying boom and a finishing table
             fixed to the rear part of the chassis makes it possible to produce a
14             coating according to the invention using aggregates which are
             coated with bitumen produced by the device or transported thereby
15             to the rear part of the chassis between the spraying boom and the
             finishing table.

16

17   '578 patent Abstract.

18             The device referred to as an "integrated paver" within the '578 patent is similar to

19   a device that is the subject of a previous French Patent, Patent No. 2,550,248.  '578 patent at Col.

20   4:4-6.  Only the claimed process, a three step process accomplished in 5 seconds and found in

21   claims 1-6 of the '578 patent, is at issue in this suit.  (ECF 53 at 2 n.1.)

22             The background and invention summary sections of the '578 patent clarify the

23   claimed method by describing several problems with the paving technology that existed at the

24   time of the application, and the ways in which the proposed technology of the '578 patent would

25   solve those issues in an efficient manner.  *See* '578 patent at Col. 1-3.  First, at the time of the

26   /////

1   application, several different machines were used to lay and compact asphalt. *Id.* at Col. 1:14-

2   23.  Additionally, good-quality chips were wasted through "rejection." *Id.* at Col. 1:24-56.

3   Specifically, prior art required the laying of a quantity of loose chips that was greater than

4   necessary to cover the binding material, because the chips would be lost first when vehicles

5   began traveling on the road, and again with the onset of cold weather. *Id*.  Finally, repairs were

6   accomplished by using a thin layer of binding material, usually "less than 10% of the total

7   quantity of bitumen used," which provided smooth coverage but very little tire adhesion when

8   the road was wet. *Id*. at Col. 2:44-57.

9          The dispute in this case allegedly arises out of the termination of an agreement

10  between the parties. *See generally* First Am. Compl (FAC).  According to the operative

11  complaint, the parties entered into a "sublicense agreement," whereby plaintiff authorized

12  defendants to sell or use the process covered by the '578 patent.  FAC ¶ 11.  On or around April

13  23, 2009, defendants' right to use the technology covered by the '578 patent allegedly ceased.

14  *Id.*  The '578 patent subsequently expired on July 20, 2010, meaning the alleged infringement

15  period ran from approximately April 23, 2009, to July 20, 2010.  *Compare id. with* ECF 53 at 1

16  n.1.

17  II.     CLAIM CONSTRUCTION STANDARD

18         Construction of patent claim terms is a question of law to be determined by the

19  court. *Markman v. Westview Instruments*, 517 U.S. 370, 387, 390 (1996) (*Markman II*).  The

20  construction exercise is "'a way of elaborating the normally terse claim language in order to

21  understand and explain, but not to change, the scope of the claims.'" *Embrex, Inc. v. Service*

22  *Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting *Scripps Clinic v. Genentech,*

23  *Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) (overruled on other grounds)).  The parties identify

24  the words of a claim that are in issue, and the court determines the disputed aspects of the claim

25  construction.  *See, e.g., Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200

26  F.3d 795, 803 (Fed. Cir. 1999) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568

1    (Fed. Cir. 1997)).  The burden of correct interpretation lies with the court.  *See Level One*

2    *Communications, Inc. v. Seeq Technology, Inc.*, 987 F. Supp. 1191, 1195 (N.D. Cal. 1997).

3    Whether an accused device or process infringes should not be considered in the construction

4    exercise.  *See Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1324 (Fed. Cir.

5    2003).

6              In construing a patent claim, "[i]t is well-settled that . . . the court should look

7    first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the

8    specification and, if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc.*,

9    90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d

10   967, 986 (Fed. Cir. 1995) (*Markman I*), *aff'd,* 517 U.S. 370 (1996); *see also Phillips v. AHW*

11   *Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a bedrock principle of patent law that the

12   claims of a patent define the invention to which the patentee is entitled the right to exclude.")

13   (citations and internal quotations omitted)).  Disputed claim terms are construed according to "an

14   objective test of what one of ordinary skilled in the art at the time of the invention would have

15   understood the term to mean," in the context of the entire patent.  *Markman I,* 52 F.3d at 986;

16   *Phillips*, 415 F.3d at 1313.

17             From time to time, an analysis of the intrinsic evidence will not resolve an

18   ambiguity in a disputed term or phrase.  *Vitronics Corp.*, 90 F.3d at 1583.  When this occurs,

19   extrinsic evidence, in the form of "'expert and inventor testimony, dictionaries, and learned

20   treatises,'" *Phillips v. AWH Corp.*, 415 F.3d at 1317 (quoting *Markman I*, 52 F.3d at 980 (other

21   citations omitted)), "may be accepted by the court to enhance its understanding of the

22   technology." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1340 (Fed. Cir. 2001) (citations omitted).

23   "However, extrinsic evidence cannot be used to contradict the established meaning of the claim

24   language." *Id.* (citations omitted).

25   /////

26   /////

1    III.     CONSTRUCTION OF WORDS AND PHRASES IN CLAIM 1

2                 The parties jointly propose constructions for three terms in claim 1: **bituminous**,

3    **layer of bituminous liquid binding material**, and **bitumen**.  (ECF 47-1; ECF 53 at 10-11.)

4    Although a court is not required to accept the parties' proposed construction of a term or phrase,

5    *see Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005), "[a]s a

6    general matter, the [c]ourt accepts parties' stipulations to the definition of a [term or] phrase,

7    unless it appears to be erroneous as a matter of law."  *Regents of the University of Cal. v. Micro*

8    *Therapeutics, Inc.,* 507 F.Supp.2d 1074, 1080 (N.D.Cal. 2007) (citing *Atmel Corp. v.*

9    *Information Storage Devices, Inc.*, 1998 WL 775115 (N.D. Cal. 1998); *LG Electronics v. Q-Lity*

10   *Computer, Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002)).  In this case, the court finds that the

11   jointly proposed constructions comport with what a person ordinarily skilled in the art of paving

12   would have understood these terms to mean at the time the '578 patent application was filed.  *Cf.*

13   *Constant Compliance, Inc. v. Emerson Process Management Power & Water Solutions, Inc.*, 598

14   F. Supp.2d 842, 847 (N.D. Ill. 2009) (quoting *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323-

15   24 (Fed. Cir. 2008)) (other citations omitted).  Accordingly, the court construes **bituminous**,

16   found within the phrase "spreading a layer of **bituminous** liquid binding material on the

17   surface," to mean **containing bitumen**.  The court further construes **layer of bituminous liquid**

18   **binding material**, contained in the same phrase, to mean **layer of liquid binding material**

19   **containing bitumen**.  Finally, the court construes **bitumen**, as used by the inventor in the phrase

20   "spreading a layer of aggregates, comprising loose chips covered with a pasty mixture of

21   **bitumen** and pulverulent material, over said layer of bituminous liquid binding material," to

22   mean **a hydrocarbon substance commonly derived from petroleum and often referred to as**

23   **asphalt**.

24                 Turning to the disputed terms and phrases of claim 1, the court first notes that

25   nothing in the preamble of claim 1 limits the disputed terms and phrases.  *Cf. Boehringer*

26   *Ingelheim Vetmedica v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) ("An

1 intended use or purpose [preamble statement] usually will not limit the scope of the claim

2 because such statements usually do no more than define a context in which the invention

3 operates.").  The court construes the terms and phrases identified by the parties as set forth

4 below, after a careful review of the parties' claim construction briefs, including the declarations

5 and exhibits, the technology tutorials submitted by both parties, argument during the *Markman*

6 hearing, and all applicable statutory and case law.

7          A.    **Pulverulent material**

8          The first disputed term is found in the phrase "spreading a layer of aggregates,

9 comprising loose chips covered with a pasty mixture of bitumen and **pulverulent material**, over

10 said layer of bituminous liquid binding material," in claim 1.  '578 patent at Col. 11:63-66.

11 Plaintiff argues "pulverulent material" is not limited by claim 1 and the specification makes clear

12 that it means "stone powder, fine sand and/or equivalent thickening material."  (ECF 53 at 12.)

13 Defendants argue that "pulverulent material" should be construed to mean only "stone powder or

14 fine sand," as set forth in the specification.  Defendants also argue that it would be appropriate

15 for the court to clarify the function of "pulverulent material," which is to thicken the bitumen, in

16 its construction.  (ECF 84 at 10-11; *Markman* Hearing Transcript (MHT) at 19:17-21.)

17          To determine the proper construction of "pulverulent material," the court must

18 first "look to the words of the [claim itself], both asserted and nonasserted . . . ."  *Vitronics*

19 *Corp.*, 90 F.3d at 1582 (citing *Bell Communications Research, Inc. v. Vitalink Communications*

20 *Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995)).  Here, the parties agree that this term is not explicitly

21 defined in the claims of the '578 patent (*see* ECF 53 at 12; ECF 84 at 10; MHT at 15:15-16:3).

22 Because the meaning of pulverulent material cannot be gleaned from the plain language of claim

23 1, the court must look next to the specification.  *Vitronics*, 90 F.3d at 1582.

24          The patent specification "is always highly relevant to the claim construction

25 analysis."  *Id.*  Indeed, "it is [] necessary to review the specification to determine whether the

26 inventor" has defined any terms, *id.*, as it is axiomatic that "a patentee is free to be his or her

1  own lexicographer, and thus may use terms in a manner contrary to or inconsistent with one or

2  more of their ordinary meanings." *Hormone Research Foundation, Inc. v. Genentech, Inc.*,

3  904 F.2d 1558, 1563 (Fed. Cir. 1990) (internal citations omitted).  However, the specification

4  cannot be used to either limit or unduly broaden a claim's meaning when the wording of the

5  claim is not susceptible to such limiting or broadening, *see Laitram Corp. v. Cambridge Wire*

6  *Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775

7  F.2d 1107, 1121 (Fed. Cir. 1985) (en banc)), and the court must view any defined terms in the

8  context of the patent as a whole.  *See, e.g., Vitronics Corp.*, 90 F.3d at 1582.

9          Utilizing the specification to understand the patentee's intent is recognized as a

10  "rule of construction . . . [because] the inventor may [] impart[] special meaning to a term in

11  order to convey a character or property or nuance relevant to the particular invention." *See*

12  *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).  Thus,

13  "[w]hen the meaning of a term is sufficiently clear in the patent specification, that meaning shall

14  apply." *Id.* (citing *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992);

15  *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 889 (Fed. Cir. 1984)).  "Usually [the

16  specification] is dispositive; it is the single best guide to the meaning of a disputed term."

17  *Vitronics*, 90 F.3d at 1582.

18          Here, the parties agree that "pulverulent" is a unique term.  (*E.g.*, ECF 84 at

19  11-12.)  Thus, it is particularly important to focus on the definition provided in the specification.

20  *See Vitronics*, 90 F.3d at 1582 ("[A] patentee may choose to be his own lexicographer . . . as

21  long as the special definition of the term is clearly stated in the patent specification or file

22  history.") (citations omitted).  The specification of the '578 patent provides that "pulverulent

23  material may consist of stone powder or fine sand . . . ," and pulverulent material is later referred

24  to as "stone powder or the sand," and "stone powder (or fine sand) . . . ." '578 patent at Col.

25  5:27-28, 9:31, 9:40.

26

1    The patentee's use of the term "consist" in the specification is significant because

2  it is a limiting term.  *See, e.g.*, *In re Gray*, 53 F.2d 520 (CCPA 1931); *accord Concordance*

3  *Corp. v. Amazon.com*, 2011 WL 4431138, at *10 (Fed. Cir. 2011) (holding a district court

4  properly construed a term when it found a patentee's use of the term "consists" to be limiting).

5  Defendants argue that the specification provides a clear, limited definition of pulverulent.  (*See*

6  ECF 84 at 10-13.)  Plaintiff, instead, focuses on the patentee's use of the word "may," arguing

7  that the definition provided for pulverulent is non-limiting.  (ECF 53 at 12; ECF 88 at 15-16.)

8  Plaintiff's argument is not grounded in any applicable precedent; indeed, plaintiff does not point

9  the court to any authority to support its argument regarding the term "may."  (*Id.*)  The two other

10  references to "pulverulent material" in the patent specification refer to it only as "stone powder"

11  or "sand."  '578 patent at Col. 5:27-28, 9:27-29.  Additionally, although the '578 patent later

12  discusses the function of pulverulent material as "to thicken the adhesive layer so that loose

13  chips adhere together in a thicker layer," this description is not a necessary part of the definition

14  of the disputed term because it is not referenced anywhere else, and it was not included with the

15  initial description of "pulverulent."  *See Vitronics*, 90 F.3d at 1582; '578 patent at Col. 5:27-28,

16  9:31, 9:40.  Thus, plaintiff's argument that the definition of pulverulent should include "and/or

17  equivalent thickening material" (ECF 53 at 12), and defendants' argument that it should include

18  a mention of its function "to thicken the bitumen" (MHT at 19:17-21), both are unpersuasive.

19    The court finds that a person skilled in the art of paving, at the time of the '578

20  patent application, would understand the definition provided for pulverulent material in the

21  specification "to be clear and complete enough . . . to make and use it."  *Vitronics*, 90 F.3d at

22  1582.  Therefore, the court construes the term **pulverulent** to mean "**stone powder or fine**

23  **sand**."

24    B.    **Chips**

25    Both parties rely on the specification and extrinsic evidence to support their

26  proffered constructions of the disputed term **chips**, found in the phrase in claim 1, "spreading a

1   layer of aggregates, comprising loose **chips** covered with a pasty mixture of bitumen and

2   pulverulent material, over said layer of bituminous liquid binding material." '578 patent at Col.

3   11:63-66.  Plaintiff argues the specification provides non-limiting examples of "chips," and

4   accordingly, the term should be construed as "solid materials, for example, crushed rock,

5   recycled road surface material (i.e., millings) and/or other equivalent materials, with or without

6   sand, within the range of particle sizes used to construct road surfaces."  (ECF 53 at 13-14.)

7   Defendants argue that the specification provides a specific meaning for "chips," which excludes

8   certain materials, and therefore the term should be construed as "a collection of crushed rocks

9   that are similar rather than various particle sizes. Chips are larger than and do not include sand or

10  sand-sized particles."  (ECF 84 at 13-14.)

11              First, the parties agree that "chips" is not defined in claim 1.  (*See* ECF 53 at

12  13-14; ECF 84 at 13-14).  Turning to the specification, *see Vitronics*, 90 F.3d at 1582, plaintiff

13  argues that several portions of the '578 patent provide non-limiting examples of the disputed

14  term, while defendants argue that the patent language clarifies what "chips" are not.

15  Importantly, the specification provides that the claimed method "can be implemented regardless

16  of the particle size of the loose chips used to form the coating, within the limit of the particle

17  sizes usually used to produce coatings according to prior art."  '578 patent at Col. 11:33-37.  In

18  the very next paragraph, the chips are referred to as "crushed rock loose chips."  *Id.* at 11:38.

19              Although plaintiff argues that the specification does not exclude sand-sized

20  particles from the term "chips" (ECF 53 at 14), defendants' argument that the '578 patent

21  provides examples of what are not chips is persuasive.  (*See* ECF 84 at 13.)  Indeed, throughout

22  the specification, various materials are discussed separately from "chips," including aggregates,

23  sand, fine sand, stone powder, and millings.  (*Id.* at 19, citing '578 patent at Col. 5:59-67,

24  7:19-43, 10:19-28); *see also Multiform Desiccants, Inc.*, 133 F.3d at 1477.  However, in order to

25  properly construe the disputed term, the court still must look to extrinsic evidence because the

26  specification explicitly references prior art to define "chips," but does not provide further

1  clarification.  *E.g.*, '578 patent at 1:13-29, 11:33-37; *accord Gart v. Logitech, Inc.*, 254 F.3d

2  1334, 1340 (Fed. Cir. 2001)  (citations omitted)  (noting that extrinsic evidence "may be

3  accepted by the court to enhance its understanding of the technology").

4            Plaintiff argues that the declaration submitted by its expert establishes that

5  various particle sizes, including sand, "had historically been used in aggregates in the production

6  of road surface coatings."  (ECF 53 at 17, citing King. Decl. ¶¶ 11-13.)  However, this

7  interpretation contradicts the specification here, which treats sand and chips differently, *see* '578

8  patent at Col. 5:59-67, 7:19-43, 10:19-28, and it is well-established that "extrinsic evidence

9  cannot be used to contradict" the claim language.  *See Gart*, 254 F.3d at 1340 (citations omitted).

10  Defendants present evidence that a skilled artisan at the time of the '578 patent application's

11  submission would have understood "chips" to be crushed rocks of substantially single-sized

12  gradation, and plaintiff does not offer any further evidence to rebut this.  (*Compare* ECF 84 at

13  14-18, citing Hicks Decl., with ECF 88 at 17-29.)  Therefore, the court finds that a person skilled

14  in the art of paving would find **chips** to mean **"crushed rocks of substantially single-sized**

15  **gradation, which are distinct from aggregates, sand, fine sand, stone powder, and millings**,"

16  at the time the '578 patent application was filed.  In so construing "chips," the court further finds

17  that the statement within the specification regarding other materials that may be used to produce

18  coatings may be helpful to plaintiff at the infringement stage, but cannot be used to expand the

19  meaning of chips.  *See Laitram*, 863 F.2d at 865 (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775

20  F.2d 1107, 1121 (Fed. Cir. 1985) (en banc)) (noting it is inappropriate to either limit or unduly

21  broaden a claim's meaning when the word of the claim is not susceptible to such limiting or

22  broadening).

23          C.      **Layer of aggregates, comprising loose chips covered with a pasty mixture of**
                    **bitumen and pulverulent material**

24

25            The parties submit different constructions for the phrase "**layer of aggregates,**

26  **comprising loose chips covered with a pasty mixture of bitumen and pulverulent material**,"

1  found in claim 1.  '578 patent at Col. 11:63-66.  Plaintiff submits this phrase should be construed

2  as a "layer of aggregates, including but not limited to, loose chips (with or without sand) covered

3  with a pasty mixture which includes, but is not limited to, bitumen and pulverulent material,

4  where the bitumen, pulverulent material and sand do not fill all the gaps in the layer of

5  aggregates," because the phrase is "virtually unrestricted by the claims and the specification" of

6  the '578 patent; in particular, the layer of aggregates phrase "uses the word 'comprising' as a

7  transition to the list of components."  (ECF 53 at 22-23).  Defendants propose the phrase be

8  construed as a "layer of loose chips that are covered with a pasty mixture of bitumen and

9  pulverulent material, also called 'dressed aggregates.' This is distinguished from bituminous

10  coated products, also known as hot mix asphalt, which is a mixture of bitumen, aggregates, one

11  or more sands and a pulverulent material (e.g. 'sands' meaning natural sands or sand-sized

12  particles)."  (ECF 84 at 22.)  Defendants argue their construction comports with the specification

13  and that plaintiff's proposed construction is improper because it includes material clearly

14  disclaimed during the prosecution of the '578 patent.  (*Id*. at 22-27.)

15          Because, as the parties agree, the disputed phrase is not defined in claim 1, the

16  court must turn to the specification.  *See Vitronics*, 90 F.3d at 1582.  As with "pulverulent

17  material," the disputed phrase "layer of aggregates, comprising loose chips covered with a pasty

18  mixture of bitumen and pulverulent material," is defined in the '578 patent specification.

19  '578 patent at Col. 5:59-65; *see Multiform Desiccants, Inc.*, 133 F.3d at 1477.  The patent-in-suit

20  provides that the layer of aggregates "consisting of loose chips covered with bitumen and mixed

21  with pulverulent material, may hereinafter be called dressed aggregates in order to distinguish

22  them from bituminous coated products which form an amorphous mass consisting of a mixture

23  of bitumen, aggregates, one or more sands and a pulverulent material . . . ."  '578 patent at Col.

24  5:59-65.

25          Defendants argue that even though the disputed phrase contains the word

26  "comprising," the specification makes clear that the layer of aggregates at issue consists only of

11

1   the materials they list in their proposed construction.  (ECF 84 at 24-25.)  Indeed, as noted by

2   defendants, the patentee repeatedly describes the layer of aggregates as "consisting" of loose

3   chips covered with bitumen and pulverulent material, which evidences the inventor's intent to

4   limit the composition of the layer of aggregates.  (*Id.* at 23, citing '578 patent, Abstract and Col.

5   1:8-10, 3:9-12, 3:30-32, 5:27-30, 5:47-53, 5:59-63, 9:25-30.)

6   Applicable precedent makes clear that a patentee cannot use the word "comprise"

7   in a claim to expand the scope of his patent to include material that has otherwise been expressly

8   disclaimed.  *See Cias, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361-63 (Fed. Cir. 2007);

9   *Boss Control, Inc. v. Bombadier, Inc.*, 410 F.3d 1372, 1379 (Fed. Cir. 2005).  Thus, plaintiff's

10   argument that the court most focus on the word "comprise" in claim 1 is unpersuasive.  The

11   court must view any defined terms in the context of the patent as a whole.  Here, the repeated use

12   of the word "consist," coupled with the patentee's clear effort to distinguish his invention from

13   prior art, leads the court to conclude the definition provided in the specification for the disputed

14   phrase is dispositive.  *See Vitronics*, 90 F.3d at 1582; *Multiform Desiccants, Inc.*, 133 F.3d at

15   1477 ("When the meaning of a term is sufficiently clear in the patent specification, that meaning

16   shall apply.") (other citations omitted).

17   Thus, the court finds that a skilled artisan, in reading the '578 patent at the time

18   the application was filed, would understand that the patentee defined the disputed phrase in the

19   specification, in an attempt to distinguish the claimed technology from prior art.  *See Vitronics*,

20   90 F.3d at 1582.  Accordingly, **layer of aggregates, comprising loose chips covered with a**

21   **pasty mixture of bitumen and pulverulent material** is construed as "**layer of loose chips that**

22   **are covered with a pasty mixture of bitumen and pulverulent material, also called 'dressed**

23   **aggregates.'  This is distinguished from bituminous coated products, also known as hot**

24   **asphalt mix, which is a mixture of bitumen, aggregates, one or more sands and a**

25   **pulverulent material**."

26   /////

1      D.     **Compacting**

2           The parties dispute the term **compacting**, found within the phrase "compacting

3   said layer of aggregates against said layer of bituminous liquid binding material."  '578 patent at

4   Col. 11:67-68.  Plaintiff submits that the disputed term should be construed to mean "pressing by

5   the finishing table or equivalent equipment of an integrated paving machine to improve adhesion

6   and binding" (ECF 53 at 28-29), and defendants submit that "compacting" should mean

7   "compressing to embed chips, to immediately fix them so well that rejection, whether

8   operational or postponed, is prevented, to increase density and reduce air voids, and to improve

9   adhesion to existing pavement, thereby producing a surface coating suitable for vehicular

10  traffic."  (ECF 84 at 28).  Although the parties offer different constructions, both submit that

11  compacting should be construed to include one if its functions: "to improve adhesion."  (*See*

12  ECF 84 at 29 (citing '578 patent at Col. 1:20-23.))

13          Again, the parties agree that the disputed phrase is not defined in claim 1, so the

14  court must turn to the specification.  *See Vitronics*, 90 F.3d at 1582.  Plaintiff argues that the

15  specification makes clear that compacting is completed by a finishing table.  (ECF 53 at 31.)

16  Instead, however, the specification provides that the "spreading and compacting operations are

17  performed in succession by a spreader . . . it being necessary for this method to make it possible

18  to avoid rejections of loose chips . . . ."  '578 patent at Col. 3:17-24.  None of the plaintiff's

19  citations supports its assertion that compacting must be completed with an integrated paver.

20  (*Compare* ECF 53 at 31 *with* '578 patent.)  Moreover, as pointed out by defendants at the

21  *Markman* hearing, claim 1 is a method claim; therefore, requiring use of a finishing table is

22  improper when it is not clearly called for in the disputed claim.

23          Thus, the specification makes clear that compacting serves to "improve adhesion"

24  and "avoid rejections."  *See* '578 patent at Col. 3:17-24; 1:20-23; *accord Vitronics*, 90 F.3d at

25  1582.  While defendants urge the court to consider extrinsic evidence in construing the disputed

26  term, the court finds it unnecessary to do so because the language of the specification is

1    "sufficiently clear" in defining the disputed term, compacting.  *See Multiform Desiccants, Inc.*,

2    133 F.3d at 1477; *Vitronics*, 90 F.3d at 1582 ("[The specification] . . . is the single best guide to

3    the meaning of a disputed term.").  Accordingly, the court construes **compacting** to mean

4    "**compressing to avoid rejection and to improve adhesion**."

5         E.    **Compacting said layer of aggregates against said layer of bituminous liquid
               binding material**

6

7         Plaintiff and defendant offer the same respective constructions for the phrase

8    "**compacting said layer of aggregates against said layer of bituminous liquid binding**

9    **material**," as they did for the term "compacting."  (*See* ECF 47-2 at 6-8.)  Because the

10   specification and the extrinsic evidence provided are directed at the term "compacting," the court

11   concludes only that the term, and not the entire disputed phrase, requires construction.

12   Accordingly, the court declines to provide further construction of the phrase "**compacting said**

13   **layer of aggregates against said layer of bituminous liquid binding material**," as the

14   construction of the disputed term **compacting** resolves any ambiguity in the disputed phrase.

15   *See U.S. Surgical Corp.*, 103 F.3d at 1568; *Phillips*, 415 F.3d at 1313.

16        F.    **Performed**

17        Defendant asks the court to construe the next term, **performed**, which is found

18   within the phrase in claim 1, "wherein said steps of spreading said layer of binding material,

19   spreading said layer of aggregates and compacting said layer of aggregates are **performed**

20   successively along a particular direction of advance within a period of five seconds or less for

21   any given portion of said surface coating."  '578 patent at Col. 12:1-6.  Plaintiff argues no

22   construction is necessary, as this term is used in accordance with its plain meaning.  (ECF 53 at

23   33; ECF 88 at 45-47.)  Defendants argue that the term "performed" should be construed to mean

24   "carried through, brought to completion, or accomplished."  (ECF 84 at 33.)

25        The court finds it unnecessary to construe the term **performed**, as it is used in

26   accordance with its plain meaning in claim 1.  *See U.S. Surgical Corp.*, 103 F.3d at 1568;

1    *Phillips*, 415 F.3d at 1313.  Defendants are asking this court to incorporate part of the phrase in

2    which "performed" is found into a definition of the term itself.  The phrase containing

3    "performed" states that the steps of the claimed process are "performed . . . *within a period of*

4    *five seconds or less . . . .*"  '578 patent at Col. 12:1-6.  As the Federal Circuit has observed:

5    "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify

6    and when necessary to explain what the patentee covered by the claims, for use in the

7    determination of infringement.  It is not an obligatory exercise in redundancy." *U.S. Surgical*

8    *Corp.*, 103 F.3d at 1568.  The court declines to import a special meaning into the disputed term.

9           G.       **Wherein said steps of spreading said layer of binding material, spreading**
                     **said layer of aggregates and compacting said layer of aggregates are**
10                   **performed successively along a particular direction of advance within a**
                     **period of five seconds or less for any given portion of said surface coating**
11

12                  The parties offer similar constructions for the disputed phrase "**wherein said**

13   **steps of spreading said layer of binding material, spreading said layer of aggregates and**

14   **compacting said layer of aggregates are performed successively along a particular**

15   **direction of advance within a period of five seconds or less for any given portion of said**

16   **surface coating**."  '578 patent at Col. 12:1-6.  Plaintiff submits the phrase should be construed to

17   mean "the three steps of the claimed process – (I) spreading the bituminous liquid binding

18   material, (ii) spreading the layer of aggregates (referred to in claim 1) and (iii) pressing said

19   layer of aggregates against the layer of bituminous liquid binding material by the finishing table

20   or equivalent equipment of the integrated paving machine performing the process – are

21   performed successively along a particular direction of advance within a period of 5 seconds or

22   less for each point of the surface coating being produced."  (ECF 53 at 33-35.)  Defendants offer

23   the following meaning: "the three steps of the claimed method – spreading said layer of binding

24   material, spreading said layer of aggregates and compacting said layer of aggregates – are

25   performed within a period of five seconds or less, thereby producing a surface coating that is

26

1  suitable for vehicular traffic for any given portion of the surface coating being produced without

2  the need for any further treatment." (ECF 84 at 35-36.)

3        Each party also seeks to include language in the construction of the disputed

4  phrase that this court has already declined to accept, as set forth above.  Specifically, plaintiff

5  argues the court must clarify that the compacting portion of the claimed method means "pressing

6  said layer of aggregates against the layer of bituminous liquid binding material by the finishing

7  table or equivalent equipment of the integrated paving machine performing the process." (ECF

8  53 at 33-35.)  Defendants argue the claimed method, once completed, produces "a surface

9  coating that is suitable for vehicular traffic for any given portion of the surface coating being

10  produced without the need for any further treatment." (ECF 84 at 35-36.)

11        In light of the court's construction of the disputed term **compacting**, and the

12  court's finding that **performed** is used in accordance with its plain meaning in the '578 patent, it

13  is unnecessary to construe the disputed phrase. *See U.S. Surgical Corp.*, 103 F.3d at 1568;

14  *Phillips*, 415 F.3d at 1313.  Doing so would be engaging in "an obligatory exercise in

15  redundancy." *U.S. Surgical Corp.*, 103 F.3d at 1568.  The parties' incorporation of their

16  proposed construction of other disputed terms into the phrase at issue provides a further basis for

17  finding that the phrase need not be construed. *Accord id.*  For these reasons, the court finds the

18  phrase "**wherein said steps of spreading said layer of binding material, spreading said layer**

19  **of aggregates and compacting said layer of aggregates are performed successively along a**

20  **particular direction of advance within a period of five seconds or less for any given portion**

21  **of said surface coating**," is used in accordance with its plain meaning.

22        H.    **Wherein said layer of binding material contains at least 11 percent and no**
              **more than 89 percent by weight of the total quantity of bitumen present in**
23            **said surface coating**

24        In their Joint Claim Construction and Prehearing Statement, the parties offered

25  slightly different constructions of the phrase **wherein said layer of binding material contains**

26  **at least 11 percent and no more than 89 percent by weight of the total quantity of bitumen**

1   **present in said surface coating** ("**11–89 percent phrase**").  (ECF 47-2 at 12.)  However,

2   defendants concede in their claim construction brief that the difference between the parties'

3   proffered constructions is not "important in light of the prior art and accused processes in this

4   action," and agree to Road Science's proposed construction.  (ECF 84 at 40-41.)  Subsequently,

5   the parties submitted a stipulation, setting forth the following proposed construction for the

6   **11–89 percent phrase** (which is the construction originally offered by defendant):

> **This phrase defines a required value range (11 to 89 %) for the quantity of bitumen contained in the layer of bituminous liquid binding material compared, by weight, to the total quantity of bitumen contained in the entire surface coating. The value expressed by this phrase is derived from a calculation, supported by plain meaning, as follows. If X = the weight of the bitumen in the layer of bituminous liquid binding material, and X + Y = the weight of the total quantity of bitumen present in the entire surface coating, the calculated percentage value is expressed by the equation: $X/(X+Y)$. Thus, this claim phrase defines the range of X and Y values such that X divided by the sum of X plus Y yields a value from 0.11 to 0.89 (*i.e.*, 11 to 89 percent).**

14   (ECF 100.)

15           As noted above, a court need not adopt a proposed construction of a term or

16   phrase when the parties have stipulated to it, *see Pfizer, Inc.*, 429 F.3d at 1376, as the court has

17   an independent obligation to properly construe any disputed terms.  *See Level One*

18   *Communications, Inc.*, 987 F. Supp. at 1195.  Again, however, a court generally "accepts parties'

19   stipulations to the definition of a phrase, unless it appears to be clearly erroneous as a matter of

20   law."  *Micro Therapeutics,* 507 F.Supp.2d at 1080 (noting that "[i]t is in the interest of judicial

21   economy to encourage parties to stipulate to a definition . . . [but] the Court has inherent

22   authority to . . ." reject a proposed construction that is erroneous) (citations omitted).

23           In this case, the jointly proffered construction is not "clearly erroneous as a matter

24   of law."  *See id.*  Instead, it is a mathematical reflection of the language of the specification,

25   which provides that the layer of binding material must contain a defined percentage of bitumen.

26   *See Vitronics*, 90 F.3d at 1582; *Embrex,* 216 F.3d at 1347 (quoting *Scripps Clinic v. Genentech,*

1   *Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) (overruled on other grounds)).  Thus, it is proper for

2   the court to adopt the stipulated definition of the **11–89 percent phrase**, and the court finds that

3   a skilled artisan reading the phrase at the time of the invention, would understand it to mean "**a**

4   **required value range (11 to 89 %) for the quantity of bitumen contained in the layer of**

5   **bituminous liquid binding material compared, by weight, to the total quantity of bitumen**

6   **contained in the entire surface coating. The value expressed by this phrase is derived from**

7   **a calculation, supported by plain meaning, as follows. If X = the weight of the bitumen in**

8   **the layer of bituminous liquid binding material, and X + Y = the weight of the total**

9   **quantity of bitumen present in the entire surface coating, the calculated percentage value is**

10   **expressed by the equation: $X/(X+Y)$. Thus, this claim phrase defines the range of X and Y**

11   **values such that X divided by the sum of X plus Y yields a value from 0.11 to 0.89 (*i.e.*, 11**

12   **to 89 percent**)," as stipulated by the parties.  *See* '578 patent at Col. 11:5-8, 9-18; *accord*

13   *Constant Compliance,* 598 F. Supp. 2d 842 at 847.

14   IV.    <u>CONCLUSION</u>

15         For the foregoing reasons, it is hereby ORDERED that the undisputed and

16   disputed terms and phrases that require construction are construed as set forth in bold above, and

17   collected in the chart below.

18           Claim Element                  Construction

| Claim Element | Construction |
| --- | --- |
| Bituminous | Containing bitumen |
| Layer of bituminous liquid binding material | Layer of liquid binding material containing bitumen |
| Bitumen | A hydrocarbon substance commonly derived from petroleum and often referred to as asphalt |
| Pulverulent material | Stone powder or fine sand |
| Chips | Crushed rocks of substantially single-sized gradation, which are distinct from aggregates, sand, fine sand, stone powder, and millings |

18

| | |
|---|---|
| Layer of aggregates, comprising loose chips covered with a pasty mixture of bitumen and pulverulent material | Layer of loose chips that are covered with a pasty mixture of bitumen and pulverulent material, also called "dressed aggregates." This is distinguished from bituminous coated products, also known as hot asphalt mix, which is a mixture of bitumen, aggregates, one or more sands and a pulverulent material. |
| Compacting | Compressing to avoid rejection and to improve adhesion |
| Wherein said layer of binding material contains at least 11 percent and no more than 89 percent by weight of the total quality of bitumen present in said surface coating | A required value range (11 to 89 %) for the quantity of bitumen contained in the layer of bituminous liquid binding material compared, by weight, to the total quantity of bitumen contained in the entire surface coating. The value expressed by this phrase is derived from a calculation, supported by plain meaning, as follows. If $X$ = the weight of the bitumen in the layer of bituminous liquid binding material, and $X + Y$ = the weight of the total quantity of bitumen present in the entire surface coating, the calculated percentage value is expressed by the equation: $X/(X+Y)$. Thus, this claim phrase defines the range of X and Y values such that X divided by the sum of X plus Y yields a value from 0.11 to 0.89 (*i.e.*, 11 to 89 percent) |

IT IS SO ORDERED.

DATED:  May 15, 2012.

_____
UNITED STATES DISTRICT JUDGE