IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RE2CON, LLC, et al.,

                Plaintiffs,

       vs.

TELFER OIL CO., et al.,

                Defendants.

No. 2:10-cv-00786-KJM-KJN

<u>ORDER</u>

_____/

        This motion is before the court on the unopposed motion to vacate this court's claim construction order filed by plaintiffs RE2CON and Arr-Maz Products (collectively, "plaintiffs"). (ECF 132.) This motion was decided without a hearing. For the following reasons, plaintiffs' motion is DENIED.

I.     <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

        In the pending patent infringement action, plaintiffs and defendants have executed a settlement agreement.[1] (Pls.' Mot. to Vacate at 2, ECF 133.) As part of this settlement, the

---

[1] The patent at issue is United States Patent No. 5,069,578 (the "'578 patent"), which expired on July 20, 2010.

1  parties agreed to move to vacate this court's May 15, 2012 claim construction order (ECF 112).[1]

2  (ECF 133 at 2.)  As agreed, plaintiffs filed their motion to vacate on November 16, 2012 (ECF

3  133), and defendants filed a statement of non-opposition to the vacatur on November 19, 2012

4  (ECF 135).  On January 11, 2013, plaintiffs withdrew their motions to dismiss filed on October

5  26, 2012 (ECF 128; ECF 130), pending the outcome of this motion.  (ECF 145.)

6          On November 11, 2012, Shilling Construction Company sought leave to oppose

7  the motion to vacate as amicus.  (ECF 136.)  This court granted the request on December 17,

8  2012.  (ECF 141.)  Shilling stated it is a defendant in a related case before the Eastern District of

9  Oklahoma; that case was brought by the same plaintiffs, and concerns the same patent, as in the

10  underlying action before this court.  (Amicus Application at 2, ECF 136.)  The Oklahoma court

11  granted Shilling's motion to stay that case pending the outcome of the *Markman* hearing in this

12  case.  (*Id.*)  Shilling filed its opposition to the motion to vacate on December 17, 2012 (ECF

13  142), and plaintiffs filed their reply on January 3, 2013 (ECF 143).  On March 20, 2013, Shilling

14  withdrew its opposition after settling the Oklahoma litigation with plaintiffs.  (ECF 146.)  The

15  court therefore treats this motion as unopposed and does not consider Shilling's opposition or

16  plaintiffs' reply.

17  II.    LEGAL STANDARD

18          In *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994)

19  ("*Bonner Mall*"), the Supreme Court held that appellate court vacatur of district court judgments

20  in the context of settlement agreements should be granted only in "exceptional circumstances."

21

22          [1] The record is not clear as to whether the parties' settlement is conditioned on the court's
23  granting this motion to vacate.  After averring that the parties have executed a settlement
agreement, plaintiffs state that this motion, and defendants' position of non-opposition, is "a
significant factor to Plaintiff [sic] in the parties' successful resolution of this litigation."  (ECF
24  133 at 3.)  Plaintiffs also assert that "[u]pon the entry of an Order on Plaintiff's [sic] unopposed
motion to vacate the Claim Construction Order, the parties will execute and file a joint
25  stipulation of dismissal of all claims and counterclaims with prejudice."  (*Id.*)  This last assertion
is ambiguous, as it does not clearly mean the parties' settlement will fail if this court does not
26  grant the motion.

1    Those exceptional circumstances "do not include the mere fact that the settlement agreement

2    provides for vacatur." *Id.*  The Court emphasized the importance of considering the public

3    interest when contemplating the equitable remedy of vacatur: "Judicial precedents are

4    presumptively correct and valuable to the legal community as a whole.  They are not merely the

5    property of private litigants and should stand unless a court concludes that the public interest

6    would be served by a vacatur." *Id.* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v.*

7    *U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).  Thus, "quite apart from any

8    considerations of fairness to the parties," vacatur disturbs the "orderly operation of the federal

9    judicial system" by deviating from the primary route Congress has prescribed for parties who

10   seek relief from the legal consequences of judicial judgments: appeal as of right and certiorari.

11   *Id.* at 27.

12           However, in *American Games, Inc. v. Trade Products, Inc.*, the Ninth Circuit

13   distinguished *Bonner Mall* by holding that district courts, due to the "fact-intensive nature of the

14   inquiry required," enjoy "greater equitable discretion when reviewing [their] own judgments

15   than do appellate courts operating at a distance."  142 F.3d 1164, 1170 (9th Cir. 1998).

16   Therefore, a district court in this circuit, even in the context of mootness by settlement, may

17   vacate one of its own judgments absent exceptional circumstances.  *See id.* at 1168-69.  The

18   proper standard is the "equitable balancing test," which balances the hardships of the parties and

19   the public interests at stake.  *Id.* at 1166; *Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-3012

20   PVT, 2008 WL 1847183, at *1 (N.D. Cal. Apr. 23, 2008).  The standard for vacatur of a claim

21   construction order, which is not final but interlocutory, is even less rigid.  *See Persistence*

22   *Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001) (comparing Federal

23   Rule of Civil Procedure 54(b), governing vacatur of nonfinal orders, to Rule 60(b), governing

24   vacatur of final judgments).

25   /////

26   /////

III.     PLAINTIFFS' ARGUMENTS

Plaintiffs request vacatur because, in settling this case, they have agreed to forfeit their right to appeal particular aspects of the court's claim construction order that "may have been viewed to unduly limit the patented invention."  (ECF 133 at 1-3.)  Plaintiffs suggest that "district courts have commonly vacated summary judgment rulings and claim constructions that underlie those rulings when vacatur related to a settlement."  (*Id.* at 3 (citing, *e.g.*, *Persistence Software*, 200 F.R.D. at 626; *Cisco Systems, Inc. v. Telcordia Techs., Inc.*, 590 F. Supp. 2d 828 (E.D. Tex. 2008); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09–1531–PHX–JAT, 2012 WL 1768084 (D. Ariz. May 17, 2012)).)  Plaintiffs note that public policy encourages the settlement of private disputes; hence the court should not impede the parties' agreement here.  (*Id.* at 4 (citing *Blockbuster*, 2010 WL 5437226, at *3).)

Plaintiffs further argue that, because claim construction orders are not final, granting vacatur in this case will not disrupt the orderly operation of the federal judicial system.  (*Id.* at 5.)  Citing *Cisco Systems*, 590 F. Supp. 2d at 830, plaintiffs note that, according to some studies, approximately forty percent of claim construction orders appealed are reversed by the Federal Circuit.  (*Id.*)  Absent settlement, this court's claim construction would be "far from final," plaintiffs assert.  (*Id.*)  Because of the interlocutory nature of claim construction, plaintiffs maintain, it is not clear what preclusive effect claim construction orders have, as some courts apply collateral estoppel while others reason that "settlements and non-appealed claim construction rulings are not final judgments for collateral estoppel purposes."  (*Id.* (citing *Cisco Systems*, 590 F. Supp. 2d at 830)).  Finally, plaintiffs attest that settlement of this litigation will preserve substantial resources of the parties and this court, and such a settlement should thus be encouraged.  (*Id.*)

IV.     ANALYSIS

The court finds on balance that the equities in this case do not favor granting vacatur.  Authority for both granting and denying claim construction vacatur in these

4

1    circumstances exists.  *See, e.g.*, *Cisco Systems*, 590 F. Supp. 2d at 828 (granting claim

2    construction vacatur after settlement); *Zinus*, 2008 WL 1847183, at *1 (denying claim

3    construction vacatur after settlement).  Upon a review of the cases, it appears that whether courts

4    use the *Bonner Mall* standard or the equitable balancing test is often immaterial.  *Compare*

5    *TriQuint*,  2012 WL 1768084, at *2 (recognizing the equitable balancing standard but applying

6    *Bonner Mall* anyway, then granting vacatur) *with Zinus*, 2008 WL 1847183, at *1 (applying the

7    equitable balancing test, not *Bonner Mall*, but denying vacatur).  Courts do typically consider

8    several factors when deciding whether to vacate claim construction and other interlocutory

9    orders, such as collateral estoppel, the parties' resources, any agreement to seek vacatur,

10   settlement incentives, public ownership of judicial decisions, and expenditure of courts'

11   resources.  *Cf. Cisco Systems*, 590 F. Supp. 2d at 828; *Zinus*, 2008 WL 1847183, at *1-2.  Below,

12   the court examines these factors as they pertain to the two elements of the balancing of the

13   equities test: the hardship of the parties and the public interest.

14          A.      Hardship of the Parties

15          Factors relevant to hardship of the parties are collateral estoppel, the parties'

16   resources, and the parties' agreement to seek vacatur. The court concludes, as discussed below,

17   that denying the motion to vacate may cause the parties some hardship.

18                 1.      Collateral Estoppel

19          Plaintiffs aver it would be inequitable not to vacate the claim construction

20   because other courts could use it to collaterally estop plaintiffs in other litigation involving the

21   '578 patent.  This they say would be inequitable because the order is still subject to modification

22   and because plaintiffs did not take the opportunity to seek reconsideration of the construction on

23   appeal.  (ECF 133 at 1-3.)

24          The collateral or precedential value of *Markman* orders is an unsettled issue.

25   Some courts hold that a party can be collaterally estopped by claim construction in a prior case

26   that was later settled.  *See, e.g., TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 72 F. Supp. 2d 370,

1    375-79 (S.D.N.Y. 1999) (settled at trial). Other courts hold that such estoppel is unwarranted

2    when the parties have settled, because the claim construction was not fully litigated and was

3    therefore not final, *see, e.g.*, *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464,

4    467-69 (W.D. Va. 2001), or because claim construction orders are interlocutory and can be

5    modified anytime prior to final judgment, *Cisco Systems*, 590 F. Supp. 2d at 830.

6          Claim construction has been made exclusively the province of the judge, not the

7    jury, in part to further uniformity. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91

8    (1996). Uniformity suffers if courts do not give collateral estoppel effect to other courts'

9    *Markman* rulings. Some argue collateral estoppel is unwarranted when the reversal rate of claim

10    construction orders by the Federal Circuit is nearly forty percent, because the statistic suggests

11    that an alarming number of courts, if applying collateral estoppel to another court's claim

12    construction, are applying "incorrect" constructions. *Cisco Systems*, 590 F. Supp. 2d at 830;

13    *Kollmorgen*, 147 F. Supp. 2d at 467-68. Another judge considering the same patent, however,

14    independently faces the same forty percent probability of his or her claim construction being

15    reversed on appeal. Moreover, the reversal rate of forty percent of a subset of cases on appeal

16    does not necessarily mean forty percent of all claim constructions are "incorrect."

17          Collateral estoppel depends on whether a court determines a judgment is "final."

18    *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995) ("We conclude that

19    F.H. and K.W. are not collaterally estopped. The partial summary judgment was not a final

20    judgment. As a partial summary judgment, it could not have been appealed by F.H. and K.W.

21    when it was entered.") (quoted in Anthony M. Garza, *Collateral Estoppel and Claim*

22    *Construction Orders*, 6 Colum. Sci. & Tech. L. Rev. 4, at \*13-22 (2005)). As standards of

23    finality vary by circuit, it is impossible for this court to know whether other courts will in fact

24    collaterally estop plaintiffs from pursuing certain claims. Moreover, this court's claim

25    construction order would still be subject to modification if this litigation were to continue.

26    Inasmuch as plaintiffs here believe this court's construction may have unduly limited the reach

1    of the '578 patent, plaintiffs would suffer some prejudice by this court's denying the motion to

2    vacate the claim construction order.

3           However, the weight of this prejudice is reduced by three considerations.  First,

4    other courts could still rely upon the claim construction, which has been posted on the public

5    docket, even if this court formally vacated it.  Therefore, some amount of prejudice is inevitable

6    by virtue of this court's having ruled already on claim construction.  Second, the '578 patent

7    expired in 2010, so it is unlikely to be the subject of much future litigation.  Third, plaintiffs err

8    by concluding that such prejudice is necessarily inequitable.  Settlement always involves the

9    weighing of risks, including the foregoing of additional judicial determinations at the trial or

10   appeal level.  By agreeing to settlement, plaintiffs are voluntarily rendering the claim

11   construction order unreviewable, whether in subsequent motions before this court or on appeal.

12   *See Bonner Mall*, 513 U.S. at 25.  In addition, plaintiffs clearly are hoping that other courts faced

13   with construction of the '578 patent, after vacatur here, would arrive at a different construction

14   of the '578 patent than this court did; such a result would undermine the policy embodied in

15   *Markman*.  On balance, this factor weighs somewhat in favor of granting vacatur.

16          2.     The Parties' Resources

17          Plaintiffs aver that settlement of this litigation will preserve substantial resources

18   of the parties.  Ending this matter now would obviate the expenditure of additional resources.

19   However, the parties here say they have already executed a settlement agreement.  As noted

20   above, it is not clear if that agreement is expressly conditioned upon the court's granting this

21   motion to vacate; any such condition of course does not bind the court.  In any event, plaintiffs

22   do not explicitly state that vacatur is a condition precedent to their abiding by the settlement

23   agreement.  On the record before the court, it cannot be said that plaintiffs and defendants risk

24   expending additional resources if this motion is denied.  This factor does not weigh in favor of

25   granting vacatur.

26   /////

1          3.      The Settlement Agreement

2          Some courts give substantial weight to the mere fact that the parties have agreed

3  in their settlement to move for vacatur, even if the agreement is not expressly conditioned upon

4  the grant of vacatur. *Persistence Software*, 200 F.R.D. at 627.  Others do not give this fact much

5  weight. *Zinus*, 2008 WL 1847183, at *2.  The court finds that any frustration of the parties'

6  expectations is a hardship weighing in favor of granting vacatur, albeit a minimal one.

7      B.    The Public Interest

8          Factors relevant to the public interest are settlement incentives, public ownership

9  of judicial decisions, and expenditure of court resources.  Here, the public interest strongly

10  favors not vacating the claim construction order.

11          1.      Settlement Incentives

12          Plaintiffs argue that denying the motion to vacate would punish the parties for

13  settling and deter other parties from settling, because those parties could not count on joint

14  motions for vacatur to succeed.  (ECF 133 at 4.)

15          Settlement incentives cut both ways.  Plaintiffs are correct that denying motions

16  to vacate claim construction may result in fewer settlements after claim construction.  However,

17  *Bonner Mall* intimates that denying motions to vacate claim construction should actually

18  encourage parties to settle before courts expend substantial resources on *Markman* hearings.  *See*

19  513 U.S. at 28 ("*Some* litigants, at least, may think it worthwhile to roll the dice rather than settle

20  . . . if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur."

21  (original emphasis)).  The earlier the settlement, the more judicial resources are conserved.  This

22  factor weighs heavily against granting vacatur.

23          2.      Public Ownership of Judicial Decisions

24          The Supreme Court in *Bonner Mall* noted that judicial decisions are not the

25  property of private litigants: "Judicial precedents are presumptively correct and valuable to the

26  legal community as a whole."  513 U.S. at 26 (quoting *Izumi Seimitsu*, 510 U.S. at 40 (Stevens,

8

J., dissenting)).  While the claim construction at issue here is not a final order, other courts may consider it for its persuasiveness when construing the terms of the '578 patent.  Moreover, for the reasons set out above, this court does not believe the public value of the claim construction is diminished by plaintiffs' assertion that forty percent of appealed claim construction orders ultimately are vacated if appealed.  This factor also weighs significantly against granting vacatur.

       3.     Expenditure of Court Resources

The court has already expended substantial resources in ruling on claim construction in this case.  *Zinus*, 2008 WL 1847183, at *2.  These efforts would be devalued if vacatur were granted.  Moreover, granting vacatur here would increase the possibility that other courts might be called on to expend duplicative resources in construing the terms of the '578 patent.  This factor weighs in favor of denying vacatur.

V.    <u>CONCLUSION</u>

The parties have voluntarily mooted this case through settlement.  While other courts' potential application of collateral estoppel to the claim construction would be a hardship to plaintiffs, the other considerations of settlement incentives, public ownership of judicial decisions, and the expenditure of court resources, together, carry more substantial weight.  Because the public interest outweighs any hardship to the parties, plaintiffs' motion to vacate is DENIED.

     IT IS SO ORDERED.

DATED:  March 29, 2013.

_____
UNITED STATES DISTRICT JUDGE